IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

KCAZ, INC., an Arizona corporation,
d/b/a PROMPT TITLES AND REGISTRATION,
*Petitioner*,

*v.*

PHOENIX TITLE LOANS, LLC, an Arizona limited liability company,
*Respondent*.

No. 1 CA-SA 25-0366

FILED 07-27-2026

---

Petition for Special Action from the Superior Court in Maricopa County
No. LC2025-000139-001
The Honorable Joseph P. Mikitish, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

---

COUNSEL

Thrasher Law PLLC, Phoenix
By Bobby O. Thrasher, Jr.
*Counsel for Petitioner*

Maynard Cronin Erickson & Curran, P.L.C., Phoenix
By Douglas C. Erickson
*Counsel for Respondent*

---

**OPINION**

---

Presiding Judge D. Steven Williams delivered the Court's opinion in which Judge Andrew M. Jacobs and Judge Michael S. Catlett joined.

---

**W I L L I A M S**, Judge:

**¶1**     In this special action, KCAZ, Inc. d/b/a Prompt Titles and Registration ("Petitioner") seeks relief from the superior court's appellate ruling reversing the justice court's dismissal of Phoenix Title Loan's ("Phoenix Title") tort action. Because an authorized third-party provider who has a contract with the Motor Vehicle Division ("MVD") of the Arizona Department of Transportation ("ADOT") owes no legal duty to a remote third-party lender with whom it has no relationship, Phoenix Title's action against Petitioner fails. Accordingly, we accept jurisdiction and grant relief.

**FACTUAL AND PROCEDURAL BACKGROUND**

**¶2**     Petitioner issues vehicle titles, registrations, and license plates as an authorized third-party provider contracted with ADOT and MVD. *See* A.R.S. §§ 28-5100 to -5104; Ariz. Admin. Code ("A.A.C.") R17-7-101. Phoenix Title provides consumer loans secured by the title to the borrower's vehicle.

**¶3**     In 2007, about 12,000 Georgia vehicle titles were stolen during a burglary. Georgia notified ADOT of the number range for the stolen titles. In 2022, about 18 new and untitled vehicles were stolen from holding lots of vehicle manufacturers in Michigan.

**¶4**     In January 2023, Cidnee White presented Petitioner with a Georgia title for a Ford F-150, seeking a title transfer. The title, however, was an altered version of one of those stolen from Georgia in 2007. The Ford F-150 was one of the vehicles stolen from Michigan in 2022. Petitioner provided White with an Arizona certificate of title in her name.

**¶5**     With the Arizona title in hand, White applied for a loan from Phoenix Title using the Ford F-150 as collateral. While reviewing White's application, Phoenix Title contacted ADOT to verify that: (1) the Ford F-150 had a valid, unencumbered Arizona title, and (2) White was the registered owner. ADOT provided that verification. Relying on the validity of the

Arizona title, Phoenix Title loaned White $10,000 and then placed a lien on the title.

¶6         ADOT's Office of the Inspector General ("OIG") later discovered that the Ford F-150 was stolen and had a fraudulent title. The OIG canceled the Arizona title and removed Phoenix Title's secured interest. Given the theft and fraud, law enforcement seized the Ford F-150, and White defaulted on the loan from Phoenix Title.

¶7         Phoenix Title brought this action against Petitioner and White. As relevant here, Phoenix Title alleged that Petitioner negligently issued the Arizona certificate of title without conducting a proper investigation of White's application.[1] Phoenix Title asserted that, had Petitioner accessed the National Motor Vehicle Title Information System ("the National System") to authenticate White's Georgia title, Petitioner would have learned that: (1) the Georgia title was forged, and (2) no title matched the Ford F-150's vehicle identification number. According to Phoenix Title, Petitioner had a legal duty to conduct a proper "verification check" on the National System, and it breached its duty by failing to do so. Phoenix Title also alleged that, by December 2022, Petitioner had actual "knowledge of the fraud scheme," prompting its owner to instruct staff "not to title any 2022-23 Ford F-150s." Phoenix Title alleged that, despite this knowledge, Petitioner issued the Arizona title to White.

¶8         Petitioner moved to dismiss the complaint under Arizona Rule of Civil Procedure ("Rule") 12(b)(6),[2] asserting Phoenix Title had failed to state a claim upon which relief could be granted. Petitioner argued that: (1) it owes no legal duty to Phoenix Title, and (2) it is immune from civil liability.

¶9         In response to the motion, Phoenix Title reframed its claim against Petitioner as one of negligent misrepresentation rather than general negligence, describing this change to the "label" of its theory of liability as

---

[1]     In its initial complaint, Phoenix Title asserted a claim of negligence per se. It later moved to amend the complaint, which the justice court granted, and asserted a claim of general negligence.

[2]     As noted by the superior court, Arizona Justice Court Rule of Civil Procedure ("JCRCP") 128 governs motions for judgment on the pleadings filed in the justice court. While not precisely the same as Rule 12(b)(6), JCRCP 128 is similar, and therefore case law interpreting Rule 12(b)(6) "is authoritative" in this case. *See* JCRCP Introduction.

"[t]echically . . . more accurate[.]" In so doing, Phoenix Title maintained "the substance" of the negligence claim, reasserting that Petitioner had a duty to investigate and verify the validity of the forged Georgia title before issuing the Arizona title, but also arguing, for the first time, that Petitioner owed it a duty of care as "a foreseeable user of [Petitioner's] information."[3]

**¶10**      Petitioner steadfastly maintained, whether labeled negligence or negligent misrepresentation, that Phoenix Title had failed to state a viable claim. In its reply in support of the motion to dismiss, Petitioner: (1) denied that any law imposed upon it a duty of care to third parties, (2) disputed Phoenix Title's contention that "foreseeability" factors into a legal determination of duty, and (3) asserted that White's fraud constituted a superseding cause of harm.

**¶11**      After full briefing, the justice court granted Petitioner's motion to dismiss. Phoenix Title appealed to the superior court. *See* Ariz. Sup. Ct. R. App. P. – Civil 3.

**¶12**      In their appellate briefs filed in superior court, the parties largely restated the arguments they put forward in the justice court. The superior court reversed the justice court's dismissal ruling, reasoning that: (1) Petitioner undertook the task of determining the validity of the Georgia title before issuing the Arizona title and therefore owed a duty of care to "those who would reasonably rely on that title . . . to ensure that [it] . . . was accurate," and (2) White's fraud did not constitute a superseding cause of harm. Petitioner then timely filed this special action.

## JURISDICTION

**¶13**      "Our exercise of special action jurisdiction is discretionary but proper when the petitioner has no plain, adequate or speedy remedy by appeal." *Jordan v. McClennen*, 232 Ariz. 572, 574, ¶ 5 (App. 2013); Ariz. R.P. Spec. Act. 12(a). The exercise of that jurisdiction is appropriate where, as here, the matter is one of statewide importance and first impression.  Ariz. R.P. Spec. Act. 12(b)(3), (4).

**¶14**      Here, "appellate relief was exhausted when the matter, which originated in the justice court, was appealed to the superior court." *Secure Ventures, LLC v. Gerlach*, 249 Ariz. 97, 99, ¶ 4 (App. 2020); *see also* A.R.S.

---

[3]      In the event the justice court determined it had insufficiently pled a claim for negligent misrepresentation, Phoenix Title alternatively requested leave to amend its complaint. The justice court did not address the leave to amend request.

§ 22-375 (limiting appeals from the superior court, in actions appealed from a limited-jurisdiction court, to those involving "the validity of a tax, impost, assessment, toll, municipal fine or statute"). Thus, Petitioner has no remedy by appeal. *See* Ariz. R. Spec. Act. 12(a). This case also presents a legal issue of first impression. Accordingly, we accept special action jurisdiction.

## DISCUSSION

**¶15**　　　　We review the dismissal of a complaint under Rule 12(b)(6) *de novo*. *Hammer Homes, LLC v. City of Phoenix*, 256 Ariz. 526, 528, ¶ 10 (App. 2023). In so doing, we assume the truth of all well-pled factual allegations and extend the plaintiff "the benefit of all inferences arising from them," but neither "speculate about hypothetical facts that may entitle plaintiffs to relief" nor accept as true unreasonable inferences or "legal conclusions alleged as facts." *Id.* We will affirm the dismissal of a complaint if the plaintiff "is not entitled to relief under any interpretation of the facts susceptible of proof." *Id.*

**¶16**　　　　In 1992, the United States Congress enacted the Anti-Car Theft Act ("the Act"), 49 U.S.C. §§ 30501 to 30505, establishing the National System, which provides States, law enforcement officials, prospective purchasers of automobiles, and prospective or current insurers of automobiles "instant and reliable access to information maintained by the States related to automobile titling." 49 U.S.C. § 30502(a)(1), (e). By providing "adequate, timely, reliable, [and] uniform" information, the National System works to "prevent the introduction or reintroduction of stolen vehicles and parts into interstate commerce." 49 U.S.C. § 30502(a)(2). The Act requires each State to: (1) maintain and make available titling information for vehicles registered in the State, and (2) "establish a practice of performing an instant title verification check before issuing a certificate of title to an individual or entity claiming to have purchased an automobile from an individual or entity in another State." 49 U.S.C. § 30503(a)–(b). As part of the Act, Congress authorized the United States Attorney General to impose civil penalties for any "individual or entity violating" the Act's provisions but granted civil immunity to reporting persons and entities acting "in good faith and with the reasonable belief" that their conduct complies with federal law. 49 U.S.C. §§ 30502(f), 30505(a), (b).

**¶17**　　　　For its part, the Arizona legislature has also enacted statutes governing the titling and registration of foreign vehicles. To obtain a transfer of title, "the owner of a foreign vehicle that has been registered in another state" must "surrender to the department the license plates assigned to the vehicle, the registration card, the certificate of ownership

. . . and satisfactory evidence of ownership showing that the applicant is the lawful owner or possessor of the vehicle." A.R.S. § 28-2052(A). "When the department is satisfied that the application [for a certificate of title] is genuine and regular and that the applicant is entitled to a certificate, it shall register the vehicle" and assign "a distinctive title number" to the vehicle and the owner. A.R.S. § 28-2054.

¶18 Petitioner asks this court to determine whether an authorized third-party provider contracted with ADOT and the MVD owes a legal duty to a remote third-party lender, with whom it has no relationship, under: (1) common-law negligence, (2) the Restatement (Second) of Torts ("Restatement") § 552 (1977) (negligent misrepresentation), or (3) the statutory and regulatory framework governing ADOT's third-party provider program. Although Phoenix Title cited both federal and state statutes in its complaint, it concedes that none give rise to a duty in this case—explaining that the statutes "inform" the contours of Petitioner's legal duty—but "the duty itself is" grounded in the Restatement. And despite the "label" ascribed to its theory of liability in the amended complaint, Phoenix Title no longer advances a claim of negligence, maintaining that the "claim pled is 'negligent misrepresentation.'" Given Phoenix Title's concessions and framing,[4] as well as Petitioner's explanation that this court need not reach issues of immunity or superseding cause to resolve the special action because the "duty question is dispositive," we need only determine whether Petitioner owed Phoenix Title a legal duty under a claim of negligent misrepresentation.

¶19 Arizona recognizes a cause of action for negligent misrepresentation as defined by Restatement § 552. *St. Joseph's Hosp. & Med. Ctr. v. Rsrv. Life Ins. Co.*, 154 Ariz. 307, 312–13 (1987). Restatement § 552 provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

---

[4] Importantly, Petitioner agrees "that the substance of the claim sounds in negligent misrepresentation" and has fully briefed the issue.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

**¶20** The general principles governing common-law negligence also underpin negligent misrepresentation claims. *Hammer Homes,* 256 Ariz. at 528, ¶ 11. Accordingly, to state a claim for negligent misrepresentation, a plaintiff "must allege, among other elements, that the defendant owed a duty of care." *Id.* We review *de novo* whether such a duty exists. *Id.*

**¶21** Rather than "open[ing] liability to an unlimited class of individuals who are merely foreseeable," *Sw. Non-Profit Housing Corp. v. Nowak*, 234 Ariz. 387, 391, ¶ 13 (App. 2014) (citation modified), Restatement § 552 limits the "risk of liability to which [an information] supplier subjects himself" based on the "nature and extent" of the dissemination, including the "number and character of the persons" who receive the information, Restatement § 552 cmt. h.; *see also Sage v. Blagg Appraisal Co.*, 221 Ariz. 33, 39, ¶ 23 n.9 (App. 2009) ("[T]here are good reasons to conclude that a professional who provides information should not owe a duty of care to anyone who happens to receive the information."). Thus, the duty of care owed to a user of information is quite limited: "[O]ne who relies upon information in connection with a commercial transaction may reasonably expect to hold the maker to a duty of care only in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended to supply it for that purpose." *St. Joseph's Hosp.*, 154 Ariz. at 313 (quoting Restatement § 552 cmt. a).

**¶22** As delineated in Restatement § 552(1)-(2), an information provider owes a duty to a third party if it either intended to reach and influence the third party or knew the direct recipient of the information

intended to furnish the information to the third party and use the information to influence the third party. Under these prongs, knowledge and purpose are determinative, and an information provider owes "no duty to a third party who is merely a member of the larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it." *Belen Loan Invs., LLC v. Bradley*, 231 Ariz. 448, 453, ¶ 11 (App. 2012) (citation modified); *see also* Restatement § 552, cmt. j ("[T]he liability of the maker of a negligent misrepresentation is limited to the transaction that he intends, or knows that the recipient intends, to influence, or to a substantially similar transaction."); *see also Sage*, 221 Ariz. at 35, ¶ 9 ("[A] duty may be created when the maker of a statement knows the recipient intended to supply the information for the benefit of a limited group or class of persons and the plaintiff is a member of that limited group or class.") (citation modified).

**¶23** Under Restatement § 552(3), a duty arises only in the limited circumstances in which the information provider qualifies as one under a public duty. In general, a private party contracted with the government does not qualify as a government entity owing a public duty, even when tasked with performing government work. *See generally* Restatement § 552 cmt. k. But the Restatement § 552(3) "exception" is not "limited to public officers" and "may apply to private individuals or corporations *who are required by law* to file information for the benefit of the public." Restatement § 552 cmt. k. (emphasis added). "The scope of the defendant's duty to others in these cases will depend upon the purpose for which the information is required to be furnished." *Id.*

**¶24** To ascertain whether Petitioner owed Phoenix Title a duty under the liability framework outlined in Restatement § 552, we must examine the circumstances and relationships between the parties. Phoenix Title does not allege any direct communication or influence from Petitioner. Nor does Phoenix Title allege that Petitioner knew White would furnish it with the Arizona title for the purpose of influencing the loan transaction. Thus, as framed by the allegations in the complaint, Phoenix Title was neither the direct recipient of the information nor a known, intended recipient of the information. Established case law makes clear that an information provider does not owe a duty to all foreseeable recipients of information, and Phoenix Title has not alleged any facts distinguishing itself "from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it." Restatement § 552 cmt. h. Nor has Phoenix Title alleged that Petitioner was *required by law* to provide the information or cited any legal authority to support the proposition that an authorized

third-party provider is required by law to issue titles. Instead, it alleges simply that Petitioner is an authorized third-party provider under contract with the State. Because no reasonable interpretation of the facts alleged allows for a finding that Petitioner owed Phoenix Title a legal duty, the claim for negligent misrepresentation was subject to dismissal as a matter of law.

¶25 In sum, Phoenix Title failed to allege facts sufficient to create a material issue that Petitioner: (1) intended to supply it with the Arizona title, (2) knew White would do so, or (3) had a public duty to protect it. Therefore, the superior court erred by reversing the justice court's dismissal ruling.[5]

## CONCLUSION

¶26 For the foregoing reasons, we accept jurisdiction, vacate the superior court's order overturning the dismissal, and remand for further proceedings consistent with this decision. Petitioner has not cited any cognizable basis for recovering attorney's fees in this action but may recover its taxable costs incurred on appeal upon compliance with ARCAP 21.

**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:            JR

---

[5] To the extent Phoenix Title argues that Petitioner "should" be held liable for issuing the Arizona title "[e]ven if . . . it owed no duty" because it "had actual notice" of an ongoing fraudulent title scheme, it cites no authority for such a proposition and our research reveals none. As noted, *supra* ¶ 20, the existence of a duty is an essential element of negligent misrepresentation, and this threshold legal question does not turn on a defendant's knowledge of specific risks. *See Gipson v. Kasey*, 214 Ariz. 141, 144, ¶¶ 15-17 (2007) (explaining that "[w]hether an injury to a particular plaintiff was foreseeable by a particular defendant necessarily involves an inquiry into the specific facts of an individual case" and considerations of foreseeability are limited "to the factual determinations of breach and causation").